Mabel Griffith, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 8, 1979, before Judges ROGERS, BLATT and MacPHAIL, sitting as a panel of three.

*John D. Gibson*, for petitioner.

*Betty F. Perry,* Assistant Attorney General, for respondent.

OPINION BY JUDGE ROGERS, April 12, 1979:

Mildred G. Bonaccorso, guardian of the estate of her mother, Mabel H. Griffith, an incompetent, has

appealed an order of the Department of Public Welfare sustaining the Bedford County Assistance Board's denial of her application for a grant of medical assistance for the nursing home care of her ward.

Mrs. Bonaccorso was appointed guardian of her mother's estate by the Court of Common Pleas of Cambria County in April 1975. At that time the estate had assets worth $30,800, consisting of real estate valued at $10,439, $14,717 in savings accounts, $5500 in proceeds of an insurance policy on the ward's deceased husband's life and an automobile worth $150. Mrs. Griffith's net income from Social Security and the Veterans' Administration and rents seems to have been about $325 a month. Mrs. Bonaccorso's application for a grant for medical assistance for her mother was made in December 1976, twenty months after she became guardian possessed of the assets just mentioned. The County Assistance Board denied the application, pursuant to Section 177.83(b)(1) and (b)(2) of the Public Assistance Manual, 55 Pa. Code, §177.83(b)(1) and (b)(2), because it found that Mrs. Griffith's estate still had $10,000 in personal property which disqualified her for medical assistance, available only to persons having resources of $1500 or less.

On appeal, the hearing yielded the following information incorporated in the Hearing Examiner's findings: The personal property available for Mrs. Griffith's support received by her guardian upon her appointment amounts to about $15,700. The net income received by the guardian from the date of her appointment until the date of her application for medical assistance was about $6500, making a total available for Mrs. Griffith's needs during that period of about $22,600. The guardian had paid the nursing home of her mother's residence about $12,000, leaving a balance of assets remaining in excess of about $10,600. This, less some other expenses claimed by the guardian

and allowed by the County Board of Assistance, is the balance of $10,000 which the Board had decided was still available. It was also disclosed that Mrs. Bonaccorso had transferred to herself or to herself and her husband all of the remaining personal assets of the estate. This, Mrs. Bonaccorso argued, showed that her mother had no resources available for her medical care. She justified the transfer as payments of two claims against her mother: the first, in the amount of $4400, for care assertedly provided by her to both her parents during the period July 1970 until March 1975, a period before she was appointed guardian; and the second, in the amount of $7447.65, for her and her husband's living expenses from March 1975 until October 1976, to which they said they were entitled because they had moved from New York State to Bedford County to care for Mrs. Griffith.

The Hearing Examiner, whose order became the Department's Final Administration Action, upheld the County Board's decision denying the grant. This was clearly a correct disposition of the matter.

There is not a shred of evidence in the record of any contract made by Mrs. Griffith to pay for any services rendered by her daughter and, of course, the law presumes that services rendered by a child to a parent were either paid for at the time or gratuitously performed. Furthermore, Mrs. Bonaccorso seems not to have made any application for the use of principal of her mother's estate for the maintenance of her and her husband, as is required by Section 5536 of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S. §5536. Nor is there anything in the record showing that Mrs. Bonaccorso, or her husband, needed to be supported by her incompetent mother's estate. Therefore, the County Board of Assistance and the Hearing Examiner were correct in concluding that it had not been shown that Mrs. Griffith was without resources

and that the asserted insolvent condition of the estate was contrived by the guardian so as to qualify the ward for medical assistance. At worst, the estate had a claim against the guardian, which we are informed by the Southern Alleghenys Legal Aid, Inc., which represented Mrs. Bonaccorso in these proceedings, is the subject of proceedings in the Court of Common Pleas of Cambria County.

The Hearing Examiner suggested that a second ground for denying Mrs. Bonaccorso's claim in behalf of her mother might exist in 55 Pa. Code §177.83(g), declaring persons who dispose of personal property without consideration with intent to defraud the Commonwealth to be ineligible for assistance. We would have difficulty concluding that an innocent and indigent ward would be ineligible for assistance because her guardian stole the estate.

The Final Administrative Action of the Department of Public Welfare is affirmed.

### Order

And Now, this 12th day of April, 1979, the Final Administrative Order of the Department of Welfare, dated November 21, 1977, is affirmed.

---

Dissenting Opinion by Judge MacPhail:

I respectfully dissent.

The record in this case clearly shows that Petitioner, an incompetent, has no assets available to her. It is irrelevant for our purposes how much money or property Petitioner would have were she not an incompetent. It is also irrelevant for our purposes that Petitioner's daughter may have obtained possession and control of Petitioner's assets through fraudulent or illegal means. What is relevant is that Petitioner is without assets and is in need of medical assistance. Indeed, to use the words of the majority opinion, she

*is* an "innocent and indigent ward . . . ineligible for assistance because her guardian stole the estate."

Accordingly, I would reverse the order of the Department of Public Welfare and grant Petitioner's application for medical assistance. If the Department finds that the guardian is guilty of any wrongdoing, appropriate remedies are available to recoup such expenditures as may have been made on the Petitioner's behalf.